UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
JOSEPH SILVA and CHRIS SILVA,

                        Plaintiffs,

              v.

HEIL, INC.,

                        Defendant.
-------------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-3279 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiffs Joseph Silva and Chris Silva commenced the above captioned action against Defendant Heil, Inc.[1] on December 12, 2019 in the Supreme Court of the State of New York, County of Nassau, alleging, *inter alia*, product liability causes of action on behalf of Joseph Silva for design defect, manufacturing defect, failure to warn, and breach of warranty, as well as a cause of action on behalf of Chris Silva for loss of consortium.[2]  (Summons & Verified Compl., annexed to Notice of Removal as Ex. A, Docket Entry No. 1-2.)  On July 22, 2020, Defendant removed this action to the Eastern District of New York based on diversity jurisdiction under 28 U.S.C. § 1332.  (Notice of Removal, Docket Entry No. 1.)

Defendant now moves (1) to exclude Plaintiffs' liability expert, Dennis Eckstine, pursuant to Rule 702 of the Federal Rules of Evidence; (2) to exclude Mr. Eckstine and

---

[1]  Defendant contends that its correct name is "The Heil Co." not "Heil, Inc."  (Notice of Removal 1, Docket Entry No. 1.)

[2]  Plaintiff Joseph Silva discusses his breach of warranty claim in his opposition to Defendant's summary judgment motion, (*see* Pls.' Mem. in Opp'n to Def.'s Mot. ("Pls.' Mem.") 11, Docket Entry No. 33-1), but, on consent of the parties, the Court dismissed the breach of warranty claim, (Order dated Apr. 29, 2022).  The Court therefore declines to address this claim.

Plaintiffs' medical expert, Dr. Philip Rafiy, pursuant to Rule 26(a)(2)(B) of the Federal Rules of

Civil Procedure; and (3) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure on Plaintiffs' (1) design and manufacturing defect and (2) failure to warn claims.[3]   For

the reasons set forth below, the Court excludes the testimony of Mr. Eckstine with respect to

potential tailgate chain coverings, declines to exclude the testimony of Dr. Rafiy, and grants

Defendant's summary judgment motion with respect to Joseph Silva's design defect,

manufacturing defect, and failure to warn claims.

## I.   Background

The following facts are undisputed unless otherwise noted.[4]

### a.   The parties

Since 2009, Joseph Silva has been "a highway maintenance worker employed by the New

York State Department of Transportation" ("NYSDOT").[5]   Defendant manufactured the dump

body mounted to the chassis of a truck which Joseph Silva operated in the course of his job.

(Def.'s 56.1 ¶ 4.)

### b.   Joseph Silva's accident and injury

Plaintiffs contend that Joseph Silva "injured his neck, back, and shoulders while trying to

stop the tailgate on a NYSDOT truck from opening."   (*Id.* ¶ 2.)   "The truck at issue is a 2004

---

[3]   (Def.'s Mot. for Summ. J. ("Def.'s Mot."), Docket Entry No. 26; Def.'s Mem. in Supp.
of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 28; Def.'s Reply in Supp. of Def.'s Mot.
("Def.'s Reply"), Docket Entry No. 30; Pls.' Mem.)

[4]   (Def.'s Stmt. of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1"),
Docket Entry No. 29; Pls.' 56.1 Statement of Undisputed Material Facts ("Pls.' 56.1"), Docket
Entry No. 33-2.)

[5]   (Def.'s 56.1 ¶ 1; Silva Dep. Tr. ("Tr.") 13:25–14:3, annexed to Decl. of Michael H. Bai
in Supp. of Def.'s Mot. to Exclude Pls.' Experts ("Bai Decl.") as Ex. A, Docket Entry No. 27-1.)

International 4200 Series truck owned by the NYSDOT." (*Id.* ¶ 3.)  The truck and the dump

body attached to it were "manufactured to specifications issued by the NYSDOT." (*Id.* ¶ 5).

On December 20, 2016, Joseph Silva's supervisor instructed him and his co-worker,

Josue Roman, to load items into the bed of the truck, (*id.* ¶ 7), which required them to open the

truck's tailgate — a task "which typically required two to three people," (*id.* ¶ 8).  "[Joseph

Silva] was aware that the tailgate was heavy before his accident," (*id.* ¶ 36), and understood that

"the tailgate was too heavy for just one person to lift" and dangerous to handle by oneself, (*id.* ¶

37).

The tailgate on the dump body is manually operated.  (*Id.* ¶ 9.)  Each side of the tailgate

had a chain.  (*Id.* ¶ 12.)  Defendant contends that Joseph Silva and his co-worker intended to

"adjust the chains on each side of the tailgate and lower the tailgate down to a horizontal

position," (*id.* ¶ 10), but Plaintiffs contend that the two "intended on using different methods to

lower the tailgate," (Pls.' 56.1 ¶ 10).  Plaintiffs note that, according to the deposition testimony

of Joseph Silva and Mr. Roman, there are multiple methods for lowering the truck's tailgate.  (*Id.*

¶ 13.)

"At the time of the accident, [Joseph Silva] positioned himself at the tailgate on the

passenger side of the vehicle, while Mr. Roman positioned himself at the tailgate on the driver's

side." (Def.'s 56.1 ¶ 17.)  "Mr. Roman pulled the chain out on his side of the tailgate first and

asked Plaintiff if he was ready to lower the tailgate."[6] (*Id.* ¶ 18.)  Joseph Silva "testified that

while holding the tailgate up with his left hand, he was going to use his right hand to pull the

---

[6] Plaintiffs dispute this statement on the grounds that it "implies that Mr. Roman and
[Joseph] Silva were intending on lowering the tailgate with the same procedure."  (Pls.' 56.1 ¶
18.)

chain out of the keyhole one link at a time to the desired length."[7]  (*Id.* ¶ 20.)  The chain holding

the tailgate snapped, (Def.'s 56.1 ¶ 22; Pl.'s 56.1 ¶ 22), and the tailgate eventually swung fully

open, (Def.'s 56.1 ¶ 24; Pl.'s 56.1 ¶ 24).  "The top pins on the tailgate were not in place at the

time of the accident."  (Def.'s 56.1 ¶ 29.)  "Following the accident, [Joseph Silva's] co-workers

loaded the tailgate and used the truck that same day."  (*Id.* ¶ 33.)

Defendant contends that the top pins "keep the tailgate from falling," (*id.* ¶ 32), and that

they should be in place when lowering the tailgate and setting the chain length, (*id.* ¶ 31).

Plaintiffs contend that the deposition testimony concerning the use and purpose of the pins was

conflicting.  (Pls.' 56.1 ¶¶ 31–32.)

## II.  Discussion

### a.  Standards of review

#### i.  Rule 702

"The admission of expert testimony is governed primarily by the Federal Rules of

Evidence."  *United States v. Walker*, No. 18-CV-3506, 2023 WL 3451419, at *1 (2d Cir. May

15, 2023).  Rule 702 of the Federal Rules of Evidence provides that "[a] witness who is qualified

as an expert by knowledge, skill, experience, training, or education may testify in the form of an

opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will

help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony

is based on sufficient facts or data; (c) the testimony is the product of reliable principles and

methods; and (d) the expert has reliably applied the principles and methods to the facts of the

---

[7]  This lowering process had been employed by Joseph Silva for years prior to the
accident.  (Def.'s 56.1 ¶ 21; Pl.'s 56.1 ¶ 21.)

case." Fed. R. Evid. 702.[8]  "While the proponent of expert testimony has the burden of

establishing by a preponderance of the evidence that the admissibility requirements of Rule 702

are satisfied, . . . the district court is the ultimate gatekeeper."  *United States v. Jones*, 965 F.3d

149, 161 (2d Cir. 2020) (alteration in original) (quoting *United States v. Williams*, 506 F.3d 151,

160 (2d Cir. 2007)); *Richardson v. Corr. Med. Care, Inc.*, No. 22-CV-210, 2023 WL 3490904, at

*2 (2d Cir. May 17, 2023) (same); *see also United States v. Farhane*, 634 F.3d 127, 158 (2d Cir.

2011) ("The law assigns district courts a 'gatekeeping' role in ensuring that expert testimony

satisfies the requirements of Rule 702." (citation omitted)), *cert. denied*, 565 U.S. 1088 (2011).

Prior to permitting a person to testify as an expert under Rule 702, the court must make

the following findings: (1) the witness is qualified to be an expert; (2) the opinion is based upon

reliable data and methodology; and (3) the expert's testimony on a particular issue will "assist

the trier of fact."  *Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005); *see also*

---

[8]  In June of 2022, the Judicial Conference Committee on Rules of Practice and Procedure voted to approve two amendments to Rule 702.  *See* Colleen Cochran, *The Process, Progression, and Potential Ramifications of the Rule 702 Amendment*, Business Law Today (Sept. 5, 2022), https://businesslawtoday.org/2022/09/rule-702-amendment-process-progression-potential-ramifications/.  One of the two proposed amendments changes the text of the rule to read: "A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that . . . ."  Committee on Rules of Practice and Procedure, Agenda Book 891 (June 7, 2022), https://www.uscourts.gov/sites/default/files/2022-06_standing_committee_agenda_book_final.pdf.  The second proposed amendment changes subsection (d) from "the expert has reliably applied the principles and methods to the facts of the case" to "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."  *Id.* at 891–92.

If approved by the Judicial Conference and the United States Supreme Court, and not rejected, modified, or deferred by Congress, the amendments will take effect in December of 2023.  Cochran, *supra*.  Because the amendments are not in force at the time this decision is published, the Court does not apply the amended version of Rule 702.  However, in deciding these motions the Court is mindful of the proposed amendments' purpose of "emphasiz[ing] that the [C]ourt must focus on the expert's opinion, and must find that the opinion actually proceeds from a reliable application of the methodology" and "explicitly weaving the Rule 104(a) standard into the text of Rule 702."  Committee on Rules of Practice and Procedure at 871.

*United States v. Napout*, 963 F.3d 163, 187–88 (2d Cir. 2020) (explaining that the court is tasked with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993))); *United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004) (same).  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court set forth a list of factors, in addition to the criteria set forth in Rule 702, that bear on the determination of reliability: "(1) whether a theory or technique has been or can be tested; (2) 'whether the theory or technique has been subjected to peer review and publication;' (3) the technique's 'known or potential rate of error' and 'the existence and maintenance of standards controlling the technique's operation;' and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community." *Williams*, 506 F.3d at 160 (quoting *Daubert*, 509 U.S. at 593–94); *see also United States v. Morgan*, 675 F. App'x 53, 55 (2d Cir. 2017) (same); *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 358 (2d Cir. 2004) (same).  The Daubert inquiry for reliability is a "flexible one" and does not "constitute a definitive checklist or test," and thus, the Daubert factors "neither necessarily nor exclusively appl[y] to all experts or in every case." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 150 (1999) (citation omitted).

The district court is afforded "the same broad latitude when it decides how to determine reliability as it enjoys [with] respect to its ultimate reliability determination." *Id.* at 142.  Expert testimony should be excluded if it is "speculative or conjectural." *Jones*, 965 F.3d at 162 (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)); *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (same).  When an expert's opinion is based on data or methodologies "that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005) (citation

omitted); *see also Nimely*, 414 F.3d at 396 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." (alteration in original) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))).  Nevertheless, "in accordance with the liberal admissibility standards of the Federal Rules of Evidence, only serious flaws in reasoning or methodology will warrant exclusion."  *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (citing *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)); *see also Adams v. Liberty Mar. Corp.*, 407 F. Supp. 3d 196, 202 (E.D.N.Y. 2019) (same).

### ii.   Rule 56

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (same).  The court must "constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir. 2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)); *see also Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (same).  The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021) (quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)); *see also Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir.

2015) (same).  A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The court's function is to decide whether, "after resolving all ambiguities and drawing all inferences in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant."  *Miller v. N.Y. State Police*, No. 20-CV-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (first citing *Anderson*, 477 U.S. at 248; then citing *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127, 129 (2d Cir. 2013)); *see also Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000) (same).

   **b.   Motion to exclude expert opinions**

   Defendant moves to preclude the opinions of Dennis Eckstine, Plaintiffs' liability expert, and Dr. Philip Rafiy, Plaintiffs' medical expert and Joseph Silva's treating physician.  (*See* Eckstine Expert Report ("Eckstine Rep."), annexed to Bai Decl. as Ex. K, Docket Entry No. 27-11; Expert Disclosure Pursuant to R. 26(a)(2)(b) ("Joseph Silva's Expert Disclosure"), annexed to Bai Decl. as Ex. O, Docket Entry No. 27-15.)

   **i.   Expert Dennis Eckstine**

   **1.   Eckstine's background and expert report**

   Eckstine is Plaintiff's sole liability expert.  (Def.'s 56.1 ¶ 42.)  He is a "mechanical engineer whose specialty is engineering, quality and product safety for a worldwide manufacturer of construction and industrial equipment."  (Pls.' Expert Disclosure 1, annexed to Bai Decl. as Ex. L, Docket Entry No. 27-12.)  Eckstine's report, which is dated January 12, 2022, (Eckstein Rep. 1), provides a list of documents and information reviewed in compiling the report, (*id.* at 3).  The material reviewed includes, *inter alia*, an incident report documenting Joseph Silva's injury, the parties' and witnesses' deposition testimonies, and photos of the truck

and tailgate which were taken on August 31, 2021, during an inspection by Eckstine & Associates.  (*Id.* at 3–5.)  In addition to the report, Plaintiffs submitted a notarized affidavit signed by Eckstine on August 26, 2022.  (*See* Aff. of Dennis Eckstine ("Eckstine Aff."), Docket Entry No. 33-5.)  In the affidavit, Eckstine states that "the report was created in part with the aid of" his son, and "that any work performed by [his son] . . . was supervised and/or directed by myself."  (*Id.* at 2.)  Eckstine further stated that "the opinions and conclusions stated in the report are my opinions that I reached after due consideration and reasonable evaluation."  (*Id.*)

In the report, Eckstine states that "[a] covering/sleeve over the tailgate chains would reduce deterioration of the chains over the years and may have prevented this injury."  (Eckstine Rep. 53.)  Eckstine supports this claim by including in the report "an example of a protective sleeve over the tailgate chains on a similar product."  (*Id.*)  He acknowledged that he did not inspect the chain which Plaintiffs claim snapped because it "was not and currently is not available for inspection."  (*Id.* at 52.)

Eckstine also concluded that Defendant "failed to provide a reasonably safe product with appropriate warnings and safe use decals on the machine near the tail gate or on the dump body regarding the safe use of the tail gate and how to utilize the chains to safely lower it."  (*Id.* at 53.)  In addition, Eckstine opined that Defendant and its "successors failed to provide replacement manuals for the operator's manuals, safe use manuals, service/maintenance manuals, parts manuals and training materials so that current users could safely use this product."  (*Id.* at 58.)  He further opined that the lack of device manuals placed "users of this product . . . in harm's way and the products are unreasonably dangerous."  (*Id.*)

## 2.   The Court excludes Eckstine's testimony

Defendant argues that Eckstine "must be precluded from offering his design and manufacturing defect opinions because they are nothing more than pure speculation and fail the

reliability requirements of Rule 702."[9]  (Def.'s Mem. 13.)  Defendant points to statements in
Eckstine's report concerning the potential benefit of a covering or sleeve over the tailgate chains,
(*id.* at 14), NYSDOT's maintenance of the chains, (*id.* at 15), and whether Defendant supplied
improper tailgate chains, (*id.*).  In support, Defendant first identifies equivocal language in
Eckstine's report — Eckstine's claim "that '[a] covering/sleeve over the tailgate chains would
reduce deterioration of the chains over the years and *may have* prevented this injury'" — and
argues that it "is not connected to the facts of record in this case by anything other than Mr.
Eckstine's *ipse dixit*."  (Def.'s Reply 1–2.)  Defendant claims that Eckstine and Plaintiffs have
not identified a basis for Eckstine's statement and cannot do so "because the purpose of the
protective covering/sleeves *is not to prevent the chain from deteriorating*," but "to prevent the
metal chains from scratching the freshly painted dump bed."  (*Id.* at 3.)  Second, Defendant
asserts that Eckstine's testimony should be precluded for failure to comply with Rule 26(b)(2)(B)
of the Federal Rules of Civil Procedure because he did not prepare the expert report submitted in
his name, as his son "developed the opinions offered and memorialized them into the written
report."  (Def.'s Mem. 13.)  Defendant argues that permitting Eckstine to testify would
"impermissibly launder" Eckstine's son's "opinions through his father in an attempt to cloak the
opinions in any additional credibility that Mr. Eckstine's lengthier CV may provide."  (*Id.* at 22.)
Third, Defendant claims that the opinions expressed in the expert report do not satisfy the factors
outlined in *Daubert*.  (*Id.* at 16.)  Defendant argues that Eckstine did not (1) buttress his opinions

---

[9]  As an example of a speculative opinion, Defendant points to Eckstine's statement about
the strength and size of the chain connected to the tailgate.  (Def.'s Mem. 13.)  In their
memorandum of law, Plaintiffs state that they are withdrawing "any claim by Engineer Eckstine
that 'the chain may have been insufficient in strength or undersigned [sic] for its use' and 'it is
possible that the chain was not designed and manufactured to the appropriate design
specifications.'"  (Pls.' Mem. 12 n.3 (quoting Eckstine Rep. 51).)  Accordingly, the Court does
not consider these statements.

with testing, (*id.* at 17–19); (2) cite any studies or articles supporting his opinions, (*id.* at 19–20); (3) identify an error rate for his opinions, (*id.* at 20); nor (4) identify support for his opinions within the engineering community, (*id.* at 20–21).

Plaintiffs refute Defendant's claim that Eckstine did not author his report as "rank speculation," and assert that the fact that Defendant opted not to depose Eckstine underscores that Defendant did not wish to understand Eckstine's involvement in the report. (Pls.' Mem. 14–15.) Plaintiffs argue that Defendant's claim that "Eckstine cannot testify because an employee of his company participated in the evaluation process . . . lacks merit" because (1) "[D]efendant has failed to cite to any precedent that states an expert cannot have others assist the expert in performing his evaluation"; (2) "[D]efendant's expert . . . had another engineer at his firm (Fusion Engineering) perform inspection of competitor manufacturers' tailgates and review some of the discovery materials, including depositions"; (3) "[D]efendant waived Engineer Eckstine's deposition, and waived the opportunity to inquire into his knowledge (or lack thereof) of his signed report"; and (4) "there is no evidence that the opinions in the report are not of Engineer Eckstine." (*Id.* at 15.) Plaintiffs also contend that "the evidentiary foundation that the defense counsel is alleging should be a basis to preclude Engineer Eckstine's opinion (his failure to be physically present at the truck's inspection) is a basis/argument that [D]efendant's own expert rejects." (*Id.* at 18.)

### A.   Eckstine may rely on the work of his son

The Court is not persuaded by Defendant's argument that Eckstine's opinions should be precluded because he is merely an empty vessel for his son's opinions. Experts may "present the work of others if the expert supervised, directed, or participated in that work, and if the expert is qualified in the field and could perform the work themselves." *Pac. Life Ins. Co. v. Bank of N.Y. Mellon*, 571 F. Supp. 3d 106, 115 (S.D.N.Y. 2021) (citing *In re M/V MSC Flaminia*, No. 12-CV-

8892, 2017 WL 3208598, at *2 (S.D.N.Y. July 28, 2017)).  According to Eckstine's sworn affidavit, he supervised and directed the work of his son that contributed to his expert report. (Eckstine Aff. 2.)  Defendant has not presented any evidence to refute Eckstine's assertion.  *See Redcell Corp. v. A. J. Trucco, Inc.*, No. 20-CV-18, 2022 WL 3700148, at *13 (S.D.N.Y. Aug. 26, 2022) (finding "nothing objectionable about" an expert's reliance on assistants in preparing his report where the expert supervised his assistants' analysis, formulated his own opinion based on that analysis, and prepared his own report); *Long-Term Cap. Holdings, LP v. United States*, No. 01-CV-1290, 2003 WL 21269586, at *4 (D. Conn. May 6, 2003) (finding that petitioners had not established that the opposing party's expert's report was ghostwritten by another expert because "the documents before the [c]ourt may be interpreted to show that [the expert's] report was edited and permissibly drafted, to a limited extent, by [the alleged ghostwriter] but reflects the independent opinion of the testifying expert").

### B.   Eckstine may not opine on protective sleeves

The Court excludes Eckstine's opinion with respect to the protective sleeve because it is unsupported.  Eckstine stated that Defendant manufactured and sold the body and tailgate "without a protective sleeve over the tailgate chains," and further claimed that "[a] covering/sleeve over the tailgate chains would reduce deterioration of the chains over the years and may have prevented this injury."  (Eckstine Rep. 53.)  While Eckstine's report included "an example of a protective sleeve over the tailgate chains on a similar product," (*id.*), it did not provide an evidentiary basis for Eckstine's assertion that the sleeve would have reduced the chains' deterioration and may have prevented Joseph Silva's injury.  *See Zaremba*, 360 F.3d at 358–59 (affirming district court's exclusion of expert's testimony concerning an untested alternative design which was not subject to peer review and did not have a known rate of error); *Gambardella v. Tricam Indus., Inc.*, No. 18-CV-10867, 2020 WL 5548825, at *6 (S.D.N.Y.

Sept. 16, 2009) (barring expert testimony that a design addition would have made a product safer because the expert "provide[d] no basis for his assumption" nor "data or facts for his conclusion").  Accordingly, the Court excludes the portion of Eckstine's testimony concerning the chain covering.

### ii.    Expert Dr. Philip Rafiy

Defendant moves to exclude Dr. Rafiy's opinion because he did not timely comply with the disclosure requirements of Rule 26(a)(2)(B)(v) of the Federal Rules of Civil Procedure. (Def.'s Mem. 22.)  Defendant argues that when Plaintiffs did provide a list of Dr. Rafiy's prior testimony, it was "simply a computer-generated list of charges" which did "not identify any case names, the court in which the litigation was pending, the party for whom Dr. Rafiy testified, or any other information," and "appear[ed] to have been printed directly from a business-management software program [which] presumably could have easily been provided before the disclosure deadline passed."  (*Id.* at 22–23.)  Defendant claims that it "did not depose Dr. Rafiy *because of* — not despite — Plaintiffs' failure to produce any meaningful information regarding Dr. Rafiy's litigation history."  (Def.'s Reply 6.)

Plaintiffs concede that they were dilatory in disclosing Dr. Rafiy's previous expert witness appearances, but contend that Defendant did not suffer any prejudice from the untimely disclosure.  (Pls.' Mem. 21.)

"Plaintiffs' medical expert, Dr. Philip Rafiy, did not timely disclose a list of prior testimony as required by" Rule 26(a)(2)(B)(v) of the Federal Rules of Civil Procedure.  (Def.'s 56.1 ¶ 50.)  On August 9, 2021, Magistrate Judge Anne Shields ordered Plaintiffs' expert report to be completed by November 15, 2021 and ordered all discovery to be completed by February 18, 2022.  (Scheduling Order dated Aug. 9, 2021; Min. Entry dated Aug. 9, 2021.)  On October 14, 2021, Plaintiffs requested an extension of all discovery deadlines until April 18, 2022.  (Pls.'

Mot. for Ext. of Time to Complete Discovery, Docket Entry No. 16.)  On November 8, 2021, Judge Shields ordered all discovery, including expert discovery, to be completed by March 8, 2022.  (Order dated Nov. 8, 2021.)  On November 16, 2021, Judge Shields ordered Plaintiffs to produce expert reports by January 14, 2022.  (Scheduling Order dated Nov. 16, 2021.)  Plaintiffs served an expert disclosure for Dr. Rafiy on January 14, 2022.  (Def.'s Pre-mot. Conf. Req. 2, Docket Entry No. 18.)  On January 26, 2022, Defendant sent Plaintiffs a letter stating that Dr. Rafiy's expert disclosure failed to fully comply with Rule 26(a)(2)(B) and threatened to move for sanctions if the disclosures were not resolved by January 31, 2022.  (Jan. 26, 2022 Letter from Michael H. Bai, annexed to Def.'s Pre-mot. Conf. Req. as Ex. 7, Docket Entry No. 18-7.)  On February 8, 2022, Defendant filed a request for sanctions explaining that it had not received a response from Plaintiffs to its January 26, 2022 request for Dr. Rafiy's expert disclosures pursuant to Rule 26.  (Def.'s Pre-mot. Conf. Req. 2.)  On February 14, 2022, Plaintiffs asserted that they had served a supplemental report for Dr. Rafiy which "states that he does not have a list of cases he previously testified in."  (Pls.' Pre-mot. Conf. Opp'n 1, Docket Entry No. 19.)  On February 15, 2022, Judge Shields cautioned Plaintiffs' counsel "that continued discovery delays and failure to comply with Court orders, as well as the Rules of Civil Procedure, may result in sanctions." (Order dated Feb. 15, 2022.)  The following day, Judge Shields ordered Plaintiffs to provide Defendant with Dr. Rafiy's "list of other cases in which he has testified as an expert by February 23, 2022."  (Scheduling Order dated Feb. 16, 2022.)  On April 8, 2022, Defendant filed a request for a pre-motion conference explaining that "Plaintiff[s] again responded that Dr. Rafiy did not maintain a list" of his previous expert experience.  (Def.'s Pre-mot. Conf. Req. 3, Docket Entry No. 21.)  On April 20, 2022, Plaintiffs filed a response to Defendant's pre-motion conference request which attached a list of Dr. Rafiy's previous expert experiences.  (Pls.' Resp to Def.'s Pre-mot. Conf. Req., Docket Entry No. 22.)

Rule 26 of the Federal Rules of Civil Procedures requires an expert witness to provide "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." *Hunt v. CNH Am. LLC*, 511 F. App'x 43, 45 n.2 (2d Cir. 2013) (quoting Fed. R. Civ. P. 26(a)(2)(B)(v)). "Rule 37(c)(1) states that '[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.'" *Hein v. Cuprum, S.A., De C.V.*, 53 F. App'x 134, 136 (2d Cir. 2002) (quoting Fed. R. Civ. P. 37(c)(1)). "[T]he imposition of sanctions for abuse of discovery under [Rule] 37 is a matter within the discretion of the trial court." *Id.* (quoting *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995)). "Courts have stricken expert witnesses for failure to comply with Rule (26)(a)(2)(B)(v) only where a party proffering the expert has provided a seriously deficient list, or no list at all.  Even with these types of discovery infractions, courts have generally offered the non-complying party an opportunity to cure its violations." *Ellerton v. Ellerton*, No. 09-CV-71, 2010 WL 11635765, at *3 (D. Vt. Sept. 3, 2010) (citations omitted).

Although Plaintiffs' dilatory compliance with the expert disclosure requirements of Rule (26)(a)(2)(B)(v) were egregious, the Court declines to strike Dr. Rafiy's testimony.  Judge Shields granted Plaintiffs multiple extensions of expert discovery deadlines.  (*See* Order dated Nov. 8, 2021; Scheduling Order dated Nov. 16, 2021.)  In addition, Defendant informed Plaintiffs that Dr. Rafiy's expert disclosure was incomplete.  (Jan. 26, 2022 Letter from Michael H. Bai.)  Despite Defendant's request, Plaintiffs did not provide a list of cases in which Dr. Rafiy recently appeared as an expert until months later, (Pls.' Resp. to Def.'s Pre-mot. Conf. Req.), after Defendant had requested a pre-motion conference, (Def.'s Pre-mot. Conf. Req.), and after Plaintiffs initially claimed that Dr. Rafiy did not have a list, (Pls.' Pre-mot. Conf. Opp'n 1).

15

Expert discovery closed prior to Plaintiffs producing Dr. Rafiy's expert disclosure, and

Defendant chose to forego Dr. Rafiy's deposition due to the list's absence.  (Def.'s Reply 6.)

Despite Plaintiffs' delay in producing the expert disclosure materials required by Rule 26,

precluding Dr. Rafiy's testimony is an unduly harsh penalty which the Court deems unnecessary

in light of Plaintiffs' eventual Rule 26 disclosure.  *See Martinez v. Carlee Corp.*, No. 12-CV-

3112, 2013 WL 2412578, at *2 (S.D.N.Y. June 4, 2013) (declining to preclude expert testimony

of plaintiff's treating physician despite plaintiff providing an incomplete list of cases in which

the expert had recently testified).  However, given the late disclosure, the Court permits

Defendant to reopen discovery to allow Defendant to depose Dr. Rafiy and to seek sanctions for

Plaintiffs' untimely compliance.  *See Precision Trenchless, LLC v. Saertex multiCom LP*, No.

19-CV-54, 2022 WL 594096, at *20 (D. Conn. Feb. 28, 2022) (ordering defendant "to

supplement its expert disclosure to include any missing information regarding [its expert's]

expert testimony . . . over the past four years," permitting plaintiff to "notice [the expert's]

continued deposition," and holding that "[t]he expense of the deposition, including the cost of

transcripts and expert's fees, is to be borne by [defendant] because of its failure to disclose

unilaterally, as required by Rule 26, as well as its failure to explain the lack of disclosure");

*Stephen v. Hanley*, No. 03-CV-6226, 2009 WL 1437613, at *5 (E.D.N.Y. May 20, 2009)

(permitting a plaintiff to reopen expert deposition following the defendants' late Rule 26

disclosures and holding that the "defendants shall pay the costs for the court reporter, an

expedited transcript, and other related expenses").

      **c.**   **Motion for summary judgment**

      Defendant moves for summary judgment as to Plaintiffs' design and manufacturing

defect and failure to warn claims.

i.   **Design and manufacturing defect claims**[10]

Defendant argues that it "is entitled to judgment as a matter of law on Plaintiffs' design

and manufacturing defect claims because Plaintiffs have not adduced any admissible evidence

that design or manufacturing defects existed in the tailgate or chain." (Def.'s Mem. 23.)  In

support, Defendant argues first, that excluding Eckstine's report and opinions would render

Plaintiffs unable to meet their burden of proof on their design and manufacturing defect claims.

(*Id.* at 24–25.)  Second, Defendant contends that, regardless of their admissibility, "Eckstine's

design and manufacturing opinions are too equivocal and indefinite to constitute evidence of

causation," thus requiring dismissal of Plaintiffs' design and manufacturing defect claims.  (*Id.* at

25–26.)  Third, Defendant argues that summary judgment is appropriate with respect to

Plaintiffs' design defect claim because "Plaintiffs have not offered any evidence of any

alternative design of the chain or tailgate," and Eckstine "did not conduct any testing . . . or

identify any sources" validating his opinions about the viability of a sleeve being installed over

the chain.  (*Id.* at 26.)

Plaintiffs argue that the tailgate was defective because it did not have a protective

covering over the chains, and further argue that "the fact that other manufacturers produced

tailgates with protective sleeves covering the chains satisfies Daubert in regard to alternative

design." (Pls.' Mem. 12.)

---

[10]   In their brief in opposition to Defendant's motion for summary judgment, Plaintiffs
state that they are withdrawing "any manufacturing defect or design defect claim not related to
negligent warnings/instructions, except for the claim that the tailgate was defective for failing to
have protective sleeves/coverings over the chains of the tailgate." (Pls.' Mem. 11–12.)  Plaintiffs
further state that "[i]f the Silva truck was designed to have protective sleeves covering the chains
but it did not come with sleeves, then the claim is a manufacturing defect.  If the Silva truck was
not designed to have protective sleeves covering the chains, then the claim is a design defect."
(*Id.* at 12 n.4.)

### 1.   Design defect claim

"In New York, to establish a design defect, a plaintiff must 'present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner.'" *Michael v. Gen. Motors LLC*, 790 F. App'x 275, 277 n.1 (2d Cir. 2019) (quoting *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 108 (1983)).  The plaintiff bears the burden of showing "that a defect in the product was a substantial factor in causing the injury." *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 86 (2d Cir. 2006) (quoting *Fritz v. White Consol. Indus., Inc.*, 762 N.Y.S.2d 711, 714 (App. Div. 2003)).  A product is defective for the purposes of negligence or strict products liability, "if it is 'not reasonably safe.'" *Macaluso v. Herman Miller, Inc.*, No. 01-CV-11496, 2005 WL 563169, at *5 (S.D.N.Y. Mar. 10, 2005) (quoting *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 (1995)). The issue of whether a product is reasonably safe for its intended use "is determined by whether a reasonable person with knowledge of the potential for injury of the product and of the available alternatives, balancing the product's risks against its utility and costs and against the risks, utility and cost of the alternatives, would have concluded that it should not have been marketed in the condition that it was." *Saladino v. Stewart & Stevenson Servs., Inc.*, No. 01-CV-7644, 2007 WL 4285377, at *4 (E.D.N.Y. Dec. 3, 2007) (quoting *Cover v. Cohen*, 61 N.Y.2d 261, 266–67 (1984)).  A plaintiff is generally required to provide expert testimony in order to establish the feasibility and efficacy of an alternative design, unless "a reasonable alternative design is both obvious to, and understandable by, a layperson." *Soliman v. Daimler AG*, No. 10-CV-408, 2011 WL 4594313, at *3 (E.D.N.Y. Sept. 30, 2011) (quoting *Guarascio v. Drake Assocs.*, 582 F. Supp. 2d 459, 463 (S.D.N.Y. 2008)).

Having excluded the design defect testimony of Eckstine, Plaintiffs do not have any evidence that the dump body had a defect or any evidence of the feasibility of an alternative

design that would have prevented Plaintiff's injury.  *See Valente v. Textron, Inc.*, 559 F. App'x 11, 14 (2d Cir. 2014) (finding that proper exclusion of expert's testimony rendered the record devoid of any evidence supporting a design defect theory and any evidence that the alleged defect was the cause of the plaintiff's accident); *Russo v. Keough's Turn of the River Hardware, LLC*, 529 F. App'x 50, 52 (2d Cir. 2013) (holding that "[w]ithout the testimony of their expert witness, [plaintiff's] claims fail because there would be no evidence from which a reasonable jury could conclude that the [product at issue] was defective").  Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiffs' design defect claim.

### 2.   Manufacturing defect claim.

Under New York law, "a manufacturer of a defective product is liable for injuries caused by the defect."  *In re New York City Asbestos Litig.*, 27 N.Y.3d 765, 786 (2016).  "Under New York's modern approach to products liability, a product has a defect that renders the manufacturer liable for the resulting injuries if it: (1) contains a manufacturing flaw; (2) is defectively designed; or (3) is not accompanied by adequate warnings for the use of the product." *Id.* at 787 (citing cases) (internal quotation marks omitted).  There are four theories under which a plaintiff may pursue recovery based upon a claim of products liability: (1) strict liability, (2) negligence, (3) express warranty, and (4) implied warranty.  *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 888 (E.D.N.Y. 2018) (citing *Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 252 (E.D.N.Y. 2014)); *Voss*, 59 N.Y.2d at 106–07.  To prevail on a manufacturing defect claim under theories of strict liability, negligence, or breach of express or implied warranty, a plaintiff must allege that the specific product that caused the plaintiff's injury was not manufactured as designed or was not built to specifications.  *See Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 511 (S.D.N.Y. 2018); *see also Minda v. Biomet, Inc.*, 182 F.3d 900, 1999 WL 491877, at *1 (2d Cir. 1999) ("To prove the existence of a manufacturing defect, a plaintiff must

19

establish that the product was not built to specifications or that it did not conform to the manufacturer's intended design."); *McCarthy v. Olin Corp.*, 119 F.3d 148, 154–55 (2d Cir. 1997) (finding that a "a manufacturing defect . . . results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm").

Plaintiffs have not put forth evidence that Defendant failed to manufacture the tailgate to specifications or to Defendant's intended design.  Indeed, Plaintiffs have expressly withdrawn "any claim by Engineer Eckstine that 'the [tailgate] chain may have been insufficient in strength or undersigned [sic] for its use,'" in addition to Eckstine's claim that "'it is possible that the chain was not . . . manufactured to the appropriate design specifications.'"  (Pls.' Mem. 12 n.3 (quoting Eckstein Rep. 51).)  Plaintiffs have not presented any other evidence to support the notion that the tailgate was improperly manufactured.  Plaintiffs' failure to present that information is fatal to their manufacturing defect claim.  *See Cowan v. Costco Wholesale Corp.*, No. 15-CV-05552, 2017 WL 59080, at *4 (E.D.N.Y. Jan. 5, 2017) (dismissing a manufacturing defect claim in the absence of an allegation that the product at issue had a manufacturing defect when compared to other products in the market).  Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiffs' manufacturing defect claim.

### ii.  Failure to warn claim

Defendant argues that it "is also entitled to judgment as a matter of law on Plaintiffs' failure to warn claim because the alleged danger that a falling tailgate may cause an injury if it strikes the user is open and obvious," meaning that it "was under no relevant duty to warn." (Def.'s Mem. 2.)  In support, Defendant argues first that "[t]he fact that gravity will cause an unsupported tailgate to rotate open is open and obvious, as is the risk that [the] user will be injured if he or she is struck by the tailgate as it rotates open."  (*Id.* at 30; *see also* Def.'s Reply 7.)  Second, Defendant argues that even if the Court were to conclude that the danger of a falling

tailgate is not open and obvious, "Plaintiff admitted that he was aware of the danger," and

therefore summary judgment is still appropriate because "the lack of a warning was not a

proximate cause of Plaintiff's alleged injuries." (Def.'s Mem. 2.)  Third, Defendant argues that

the lack of a warning decal providing instructions for operating the tailgate was not the

proximate cause of Chris Silva's injuries because he testified that the chain breaking — rather

than the improper handling of the tailgate — caused his injuries. (Def.'s Reply 7.)

　　　　Plaintiffs argue that, based on the totality of all the evidence, they have established a

valid failure to warn claim, (Pls.' Mem. 10), "because (1) there was no warning/decal on the

tailgate itself warning users of the risk of the tailgate uncontrollably falling and (2) there was no

decal on the tailgate itself with necessary instructions on how to properly and/or safely lower the

tailgate," (*id.* at 4).  In support, Plaintiffs argue first, "that it was negligent for [D]efendant to not

place a decal on the tailgate itself warning/reminding end-users of the risk of the tailgate

uncontrollably falling and/or the risk of severe injury of being struck with a moving tailgate."

(*Id.* at 5.)  Second, Plaintiffs argue that "there was a foreseeable risk of being struck with a

tailgate," (*id.*), meaning that "a non-negligent manufacturer was required to provide end-users

with decal directions on how to safely lower the tailgate to lessen that foreseeable risk," (*id.* at

6).  Third, Plaintiffs argue that Defendant's failure to provide users with directions on lowering

the tailgate "created uncertainty and various" tailgate-lowering methods. (*Id.* at 6–7.)  In

support, Plaintiffs argue "confusion" among "the NYS DOT workers regarding the purpose of

the pins to the lowering process speaks to [D]efendant's negligence in failing to provide a decal

with adequate instructions/direction on how to properly and safely lower the tailgate." (*Id.* at 8.)

Fourth, Plaintiffs claim that Defendant acted negligently by not following "the industry

standard" of "plac[ing] decals on tailgates containing warnings of risk and instruction as to how

to safely lower the tailgate." (*Id.* at 9.)  Fifth, Plaintiffs argue that the Court should disregard

Defendant's "open and obvious" contention because — "the facts (1) that there was no proper directions on how to properly lower the tailgate; (2) the DOT workers used various methods to lower the tailgate; (3) the DOT workers were unaware of the purpose of the 'pins'" — are "all further proof that the 'risks' created by the lowering of the tailgate were not open and obvious." (*Id.* at 20.)

To establish a claim for failure to warn, a plaintiff must prove "(1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm." *State Farm Fire & Cas. Co. v. Nutone, Inc.*, 426 F. App'x 8, 10 (2d Cir. 2011) (citing *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 237 (1998)); *see also Bravman v. Baxter Healthcare Corp.*, 984 F.2d 71, 75 (2d Cir. 1993) ("A plaintiff proceeding under a failure-to-warn theory in New York must demonstrate that the failure to warn adequately of the dangers of a product was a proximate cause of his or her injuries." (citing *Glucksman v. Halsey Drug Co., Inc.*, 553 N.Y.S.2d 724, 726 (App. Div. 1990))). "As part of satisfying those elements, a plaintiff is 'required to prove that the product did not contain adequate warnings.'" *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 575 (E.D.N.Y. 2012) (quoting *Mulhall v. Hannafin*, 841 N.Y.S.2d 282, 285 (App. Div. 2007)). However, "when a user is aware of the dangers of using a product, the supplier cannot be held liable for a failure to warn." *Jiang v. Ridge Tool Co.*, 764 F. App'x 43, 45 (2d Cir. 2019) (citing *Billiar v. Minn. Min. & Mfg. Co.*, 623 F.2d 240, 243 (2d Cir. 1980)).

The Court grants Defendant's motion for summary judgment on Plaintiffs' failure to warn claim because Joseph Silva was aware of the risk of injury posed by the dump body. Joseph Silva knew "that the tailgate was heavy before his accident," (Def.'s 56.1 ¶ 36), and understood that opening the truck's tailgate required the strength of two or three individuals, (*id.* ¶ 8). Joseph Silva was specifically aware that the tailgate was dangerous. (*Id.* ¶ 37). His

awareness of this danger requires the dismissal of his failure to warn claim.  *See Milliman v. Mitsubishi Caterpillar Forklift Am., Inc.*, 594 F. Supp. 2d 230, 247 (N.D.N.Y. 2009) (dismissing failure to warn claim because plaintiff "admit[ted] he was aware of the dangers . . . prior to his accident"); *Levine v. Sears Roebuck & Co.*, 200 F. Supp. 2d 180, 190 (E.D.N.Y. 2002) (granting summary judgment on failure to warn claim where plaintiff "presented no facts to dispute defendant's contention that the condition of the [product] was known to plaintiff prior to the accident"); *see also Karavitis v. Makita U.S.A., Inc.*, 722 F. App'x 53, 56 (2d Cir. 2018) (affirming grant of summary judgment on failure to warn claim where plaintiff "offer[ed] no evidence suggesting that different warnings would have altered his behavior").  Accordingly, the Court grants Defendant's motion for summary judgment with respect to Plaintiffs' failure to warn claim.[11]

### III.  Conclusion

For the reasons stated above, the Court excludes the portion of Eckstine's testimony concerning chain coverings, declines to exclude the testimony of Dr. Rafiy, grants Defendant's motion for summary judgment as to Joseph Silva's design defect, manufacturing defect, and

---

[11]  In light of the Court's decision granting Defendant's summary judgment motion as to Joseph Silva's design defect, manufacturing defect, and failure to warn claims and the prior dismissal of Joseph Silva's breach of warranty claim, the Court orders Chris Silva to show cause as to why his loss of consortium claim should not be dismissed.  *See Jian Yang Lin v. Shanghai City Corp*, 950 F.3d 46, 49 (2d Cir. 2020) (per curiam) (recognizing that "courts have the discretion to grant summary judgment sua sponte" when the nonmoving party "has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried" (first quoting *Schwan-Stabilo Cosmetics GmbH & Co. v. Pacificlink Int'l Corp.*, 401 F.3d 28, 33 (2d Cir. 2005); and then quoting *Ramsey v. Coughlin*, 94 F.3d 71, 73–74 (2d Cir. 1996))); Fed. R. Civ. P. 56(f)(1) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant."); *see also Young v. Robertshaw Controls Co.*, 481 N.Y.S.2d 891, 894 (App. Div. 1984) ("[I]t is well established that a spouse's action for loss of consortium is derivative, and not independent, of the injured spouse's claim."); *Delehanty v. KLI, Inc.*, 663 F. Supp. 2d 127, 134 (E.D.N.Y. 2009) ("[U]nder New York law, Mrs. Delehanty's claim [for loss of consortium] must also be dismissed because Mr. Delehanty's causes of action fail.").

failure to warn claims, and directs Chris Silva to show cause as to why his loss of consortium

claim should not be dismissed.

Dated:  September 14, 2023
          Brooklyn, New York

                              SO ORDERED:


                              _____s/ MKB_____
                              MARGO K. BRODIE
                              United States District Judge